IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JOEL SCARALTO,

                Plaintiff,

v.                                                       CIVIL ACTION NO. 2:11-cv-00533

WALTER FERRELL, JR., et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the plaintiff's Motion to Remand [Docket 6].  For the reasons discussed below, this Motion is **DENIED**.

**I. Background**

On May 12, 2009, the plaintiff, Joel Scaralto, was driving down U.S. Route 35 near Henderson, West Virginia.  As Mr. Scaralto made a left-hand turn, he was rear-ended by a truck driven by Walter Ferrell.  At that time, Mr. Ferrell was employed by Arnett Holdings, Inc., d/b/a TMC Transportation.

Mr. Scaralto filed his Complaint in the Circuit Court of Kanawha County on February 18, 2011.  He alleged that due to Mr. Ferrell's and TMC Transportation's negligence, he:

> was severely injured in and about his neck, shoulder and arms, has incurred medical expenses and will incur additional medical expenses in the future; has endured pain and suffering, both in the past and in the future; has sustained an impairment of the capacity to enjoy life, both past and future; and the plaintiff has in the past suffered annoyance, aggravation, and mental anguish and will continue to do so in the future.

(Compl. ¶ 7 [Docket 1-1].) In the Complaint, Mr. Scaralto also alleges that he is entitled to punitive damages. (*Id.* at ¶ 9.)

Mr. Ferrell filed a Notice of Removal on August 8, 2011, and attached TMC Transportation's Consent to Removal.[1] The Notice of Removal states that the Complaint does not specify the amount of damages sought and at the time the plaintiff filed the Complaint, his medical bills totaled less than $15,000. On July 8, 2011, the plaintiff made a settlement demand via email for $150,000. According to the defendants, removal is proper under 28 U.S.C. § 1446(b) because the demand constitutes "other paper" and the Notice of Removal was filed within thirty days after receiving the settlement demand.

## II. Standard of Review

An action may be removed from state court to federal court if it is one over which the district court would have original jurisdiction. 28 U.S.C. § 1441(b). Because the federal courts are courts of limited jurisdiction, the party seeking removal bears the burden of demonstrating that it is proper. *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008). "But this burden is no greater than is required to establish federal jurisdiction as alleged in a complaint." *Id.* Here, removal is premised on 28 U.S.C. § 1332(a), which states: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between [] [c]itizens of different States . . . ." 28 U.S.C. § 1332(a).

## III. Discussion

---

[1] In the Motion to Remand, Mr. Scaralto argues that the suit should be remanded because Mr. Ferrell did not consent to removal. Even though the parties have been unable to locate Mr. Ferrell, removal is appropriate under West Virginia Code § 56-3-31. The statute authorizes an insurance company that has been properly served to take any action allowed by law on behalf of the defendant. W. VA. CODE § 56-3-31 (2008).

*a. Citizenship*

There is no dispute that the parties are diverse. The plaintiff, Mr. Scaralto, is a West Virginia resident. TMC Transportation is an Iowa resident, and Walter Ferrell is a resident of Virginia.

*b. Amount in Controversy*

    i.    <u>Discussion</u>

In the removal context, determination of whether the amount in controversy exceeds the jurisdictional minimum has typically proceeded in two different ways, depending on whether there is an *ad damnum* clause in the complaint that contains an amount over the jurisdictional minimum.[2] If there is an *ad damnum* clause in the complaint and the plaintiff asks for more than $75,000, then the court finds that the amount in controversy requirement has been met unless it is a legal certainty that the plaintiff cannot recover more than $75,000. 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3725.1 (4th ed. 2009). In contrast, in this district, if there is no *ad damnum* clause with an amount over $75,000, the defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum. *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 489 (S.D. W. Va. 2001). In determining whether the defendant has met this burden, the court considers a number of factors, including the plaintiff's injuries, amounts awarded in similar cases, expenses incurred to date, and settlement demands to make a judicial valuation of what a jury would award the plaintiff assuming the plaintiff prevails. *Id.* I will call this the "judicial valuation" approach.

This second approach stands in stark contrast to the bright-line test applied when there is

---

[2] An *ad damnum* clause is defined as "A clause in a prayer for relief stating the amount of damages claimed." BLACK'S LAW DICTIONARY (9th ed. 2009).

an *ad damnum* clause with an amount over the jurisdictional minimum. The judicial valuation approach has a weak foundation because it misconstrues the meaning of the term "amount in controversy." It is also time-consuming and allows for disparate results in factually similar cases. The bright-line test is consistent with the term "amount in controversy," and it is transparent and predictable.

In 2008, the West Virginia legislature enacted a statute that prohibits a plaintiff in a personal injury or wrongful death action from including a "specific dollar amount or figure relating to damages" in the complaint.[3] W. VA. CODE § 55-7-25 (2008). As a consequence, district courts in this state are now more often applying the judicial valuation approach. I am regularly engaged in making an "impressionistic guess" as to the amount in controversy. ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 5.3.4 (4th ed. 2003). This state of affairs has prompted me to reconsider the purpose of the judicial valuation approach and the circumstances under which I use it.

Although the task of examining a number of factors to determine whether the defendant has met its burden of proof is unavoidable in some situations, I do not think it makes sense to do so when the plaintiff has made a settlement demand that exceeds $75,000. Indeed, I have determined that such a settlement demand should have the same legal status as an *ad damnum* clause over the jurisdictional minimum, *i.e.*, it should be conclusive of the amount in controversy unless it is a legal certainty that the plaintiff cannot recover over $75,000. I will explain.

In doing so, I will examine the current judicial valuation approach for amount in controversy disputes used in this district. Then, I will explicate the firmly established bright-line

---

[3] Other states have adopted similar statutes. *See* N.Y. C.P.L.R. § 3017(c) (McKinney 2010); 735 ILL. COMP. STAT. 5/2-604 (2003); COLO. R. CIV. P. 8(a).

4

rule that applies when the *ad damnum* clause contains an amount above the jurisdictional minimum. Next, I will make my case that plaintiffs' settlement demands over $75,000 should be treated similarly. Finally, I will highlight the practical benefits of this approach.

In the Southern District of West Virginia, we apply a preponderance of the evidence standard when the state court complaint does not include an *ad damnum* clause claiming an amount over the jurisdictional minimum.[4] *McCoy*, 147 F. Supp. 2d at 489. The defendant cannot meet its burden by simply alleging the presence of a sum in excess of the jurisdictional minimum. *Id.* Instead, a defendant must supply evidence, and the court bases its decision to remove on the record that exists at the time the petition for removal was filed. *Id.* (citing *Sayre v. Potts*, 32 F. Supp. 2d 881, 886 (S.D. W. Va. 1999)). In doing so, the court may consider a number of factors, including:

> the type and extent of the plaintiff's injuries and possible damages recoverable therefore, including punitive damages if appropriate. The possible damages recoverable may be shown by the amounts awarded in other similar cases. Another factor for the court to consider would be the expenses or losses incurred by the plaintiff up to the date the notice of removal was filed. The defendant may also present evidence of any settlement demands made by the plaintiff prior to removal although the weight to be given such demands is a matter of dispute among courts.

*Id.* (internal citations omitted). In *Sayre v. Potts*, I stated that "the amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the

---

[4] Other courts have applied different standards of proof for defendants in removal cases. *See Gafford v. General Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993) (explaining that a survey of case law revealed at least three different burdens of proof: "(1) the defendant must prove, to a legal certainty, that the plaintiff's claims are not less than the federal amount-in-controversy requirement; (2) the defendant must prove, 'more likely than not,' that the plaintiff's claims meet the federal amount-in-controversy requirement; and (3) the defendant must show that there is 'a probability' or 'some reasonable probability' that the amount in controversy exceeds the federal amount-in-controversy requirement, or that the amount in controversy 'may' or 'could' exceed the requirement (i.e., it does not appear to a legal certainty that the plaintiff's claims are for less than that amount)."), *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).

5

merits of his case as it stands at the time of removal." 32 F. Supp. 2d at 886 (citing *Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. 932, 936-37 (S.D. W. Va. 1996)). After re-reading Supreme Court cases and reviewing the treatises and law reviews, I now think that this judicial valuation approach is wrongheaded.

Under prior cases in the federal courts of this state, a settlement demand has been considered just one piece of evidence regarding the amount in controversy. *See Williams v. Hodgson*, No. 5:11CV80, 2011 WL 3793328, at *2 (N.D. W. Va. Aug. 24, 2011) (Stamp, J.) (remanding the case where the plaintiffs demanded $190,000, explaining that the settlement demand alone did not constitute competent proof that the amount in controversy exceeds $75,000); *Canterbury v. Scott*, No. 3:09-1329, 2010 WL 610052, at *4 (S.D. W. Va. Feb. 18, 2010) (Chambers, J.) (remanding the case where the plaintiff claimed total damages of $91,276.44 and proposed a settlement of $75,000, finding that the $91,276.44 was "merely the plaintiff's starting position" that does not prove by a preponderance of the evidence that the amount in controversy exceeds $75,000); *Lawson v. K-Mart Corp.*, No. 1:07-00765, 2008 WL 702124, at *2 (S.D. W. Va. March 13, 2008) (Faber, J.) (stating that "settlement offers do not adequately establish the amount in controversy. Although these offers may represent a reduction of the amount of damages the plaintiff will attempt to prove at trial, they may also overstate the plaintiff's valuation of his claim."); *Ferrell v. Jim Walter Homes, Inc.*, No. 2:07-cv-00300, 2007 WL 1704183, at *2 (S.D. W. Va. June 11, 2007) (Goodwin, J.) (remanding a case where the plaintiffs offered to settle the matter for $20,000, and explaining that "although settlement offers are not determinative of the amount in controversy, 'they do count for something'"); *Campbell v. Rests. First/Neighborhood Rest., Inc.*, 303 F. Supp. 2d 797, 799 (S.D. W. Va. 2004) (Haden, J.)

6

(denying a motion to remand when the plaintiff demanded $150,000, alleged painful and permanent injuries, and had medical bills totaling approximately $20,000).

Similarly, courts in other districts using a multi-factor approach have determined that the weight to be given to a settlement demand depends on the circumstances. *See Diaz v. Big Lots Stores, Inc.*, No. 5:10-cv-319, 2010 WL 6793850, at *2 (M.D. Fla. Nov. 5, 2010) ("The evidentiary value of a settlement offer in establishing the amount in controversy depends on the circumstances of the offer."); *Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009) ("Settlement offers commonly reflect puffing and posturing, and such a settlement offer is entitled to little weight in measuring the preponderance of the evidence. On the other hand, settlement offers that provide specific information to support the plaintiff's claim for damages suggest the plaintiff is offering a reasonable assessment of the value of his claim and are entitled to more weight.") (internal punctuation omitted); *Vermande v. Hyundai Motor Am., Inc.*, 352 F. Supp. 2d 195, 202 (D. Conn. 2004) ("A settlement offer should not necessarily be determinative of the amount in controversy. . . . [C]ourts must consider the context in which such a settlement demand was made."); *Ramchandra v. Amtrak Nat'l R.R. Corp.*, 345 F. Supp. 2d 33, 34 (D. Mass. 2004) ("A settlement demand (or offer) is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim, but it is not dispositive.") (internal quotation marks omitted).

Our judicial valuation approach is time consuming and oftentimes futile. To determine likely recovery in advance of litigation, "[t]he court either would need to hold a mini-trial at the start of the litigation to determine probable damages, or the court would be left to make an

impressionistic guess about the plaintiff's likely damages."[5] ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 5.3.4 (4th ed. 2003). The instant case demonstrates how impressionistic a guess regarding damages would be. I have very little information about the nature and extent of Mr. Scaralto's injuries. I do not know if his neck and shoulder injuries are really serious or permanent. I also do not know what the plaintiff seeks in lost wages. Moreover, although the Complaint alleges that Mr. Scaralto is entitled to punitive damages, the plaintiff's counsel has suggested, somewhat self-servingly, that he does not have a strong case for punitive damages. Finally, in light of the diminishing number of jury trials, I do not know what juries have awarded in similar cases.[6] With the evidence before me, I am unable to make a realistic judgment of what a jury would award the plaintiff assuming he prevails on the merits. And as discussed below, even if I could do so, I do not think this is the proper measure of the amount in controversy.

In contrast to the judicial valuation approach, courts consistently hold that when the amount stated in the *ad damnum* clause is more than $75,000, the defendant has met its burden of proving the amount in controversy unless it is a legal certainty that the plaintiff cannot recover over the jurisdictional minimum. 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3725.1 (4th ed. 2009). In discussing the amount in controversy where there was an *ad damnum* clause, the U.S. Supreme Court, in *Smithers v. Smith*, stated:

> Ordinarily the plaintiff's *claim* with respect to the value of the property taken from him or the amount of damages incurred by him through the defendants' wrongful act measures, for jurisdictional purposes, the value of the amount in controversy . . . unless, upon inspection, it appears that, as a matter of law, it is

---

[5] This quote is taken from Chemerinsky's discussion of the legal certainty test when the plaintiff files its case in federal court. I believe, however, that the court is put in the same situation in the removal context.

[6] An article published in 2004 stated that, "The portion of federal civil cases resolved by trial fell from 11.5 percent in 1962 to 1.8 percent in 2002, continuing a long historic decline. More startling was the 60 percent decline in the absolute number of trials since the mid 1980s." Marc Galanter, *The Vanishing Trial: An Examination of Trials and Related Matters in Federal and State Courts*, 1 J. EMPIRICAL LEGAL STUD. 459, 459 (2004).

8

>not possible for the plaintiff to recover the jurisdictional amount.

204 U.S. 632, 642 (1907) (emphasis added). The Court then explained:

>The rule that the plaintiff's *allegations* of value govern in determining the jurisdiction, except where, upon the face of his own pleadings, it is not legally possible for him to recover the jurisdictional amount, controls even where the declaration shows that a perfect defense might be interposed to a sufficient amount of the claim to reduce it below the jurisdictional amount.

*Id.* (emphasis added). In *Smithers*, the plaintiff's complaint, filed in federal court, sought monetary damages in excess of the jurisdictional amount. The defendants argued that the amount was fraudulently alleged to confer federal jurisdiction. *Id.* at 635. The Court recognized that despite its general rule that the plaintiff's statement of the case governs the determination of the amount in controversy, federal courts can protect themselves against fraudulent attempts to obtain federal jurisdiction. *Id.* at 643. The Court, however, found that the plaintiff made his claim in good faith. Accordingly, the Court held that the case should remain in federal court. *Id.* at 644-46.

In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, the respondent filed a complaint in state court, demanding an amount in excess of the federal jurisdictional minimum, and the case was removed to federal court. 303 U.S. 283, 285 (1938). After removal, the respondent filed a second amended complaint, attaching as an exhibit a list of damages totaling less than the jurisdictional minimum. The lower court then entered judgment for the respondent for less than the jurisdictional minimum and the petitioner appealed. *Id.* The Seventh Circuit found that the case should have been remanded to state court because "the record showed respondent's claim did not equal the amount necessary to give the District Court jurisdiction." *Id.* The Supreme

9

Court reversed and held that the petitioner was entitled to invoke federal jurisdiction despite the respondent's reduction in the amount claimed after removal. *Id.* at 296.

> Echoing its decision in *Smithers*, the Court explained that:
>
> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum *claimed* by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

*Id.* at 288-89 (emphasis added).[7] When a case has been removed to federal court by the defendant, "[t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end." *Id.* at 290. Therefore, "the status of the case as disclosed by the plaintiff's complaint is controlling in the case of removal." *Id.* at 291. The Court explained, however, that "if, upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount, removal will be futile and remand will follow."[8] *Id.* at 292.

---

[7] There has been some confusion over whether "good faith" and "legal certainty" are two separate tests or whether the former is measured by the latter. The U.S. Supreme Court suggested that this language constitutes a single test: "The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.' In deciding this question of good faith we have said that it 'must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'" *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961) (citing *Red Cab*, 303 U.S. at 288.).

[8] The holding in *Red Cab* is limited to instances where the amount in the state court complaint's *ad damnum* clause is above the jurisdictional minimum. The U.S. Supreme Court has not spoken on the standard when the amount in the state court complaint's *ad damnum* clause is below $75,000. In the Southern District of West Virginia, we have applied the preponderance of the evidence standard. *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 489 (S.D. W. Va. 2001). In light of W. Va. Code § 55-7-25, the court is less likely to encounter removed cases with an *ad damnum* clause containing an amount below the jurisdictional minimum. Although the issue is not before the court, our current application of the preponderance of the evidence standard when the state court complaint contains an *ad damnum* clause with an amount below the jurisdictional minimum seems conceptually inconsistent with the holding here that a settlement demand above the jurisdictional amount should generally be accorded conclusive weight. A more consistent approach would resemble the Eleventh Circuit's holding in *Burns v. Windsor Insurance Co.*, that to avoid remand, "defendant must prove to a legal certainty that plaintiff's claim must exceed [the jurisdictional minimum]." 31 F.3d 1092, 1095 (11th Cir. 1994). In effect, the defendant would have to show that the amount claimed in the *ad damnum* clause was not made in good faith and was for the sole purpose of avoiding federal jurisdiction.

These cases demonstrate that the amount in controversy is what the plaintiff claims to be entitled to or demands.[9] *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) ("The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether the plaintiff is likely to win or be awarded everything he seeks."). A settlement demand over $75,000 is very like an *ad damnum* clause over that amount and should be treated similarly. Both are statements by plaintiffs as to the amount claimed and are therefore the best measure of the amount in controversy. As Judge Easterbrook has explained, the settlement demand "is close in spirit to the *ad damnum* in a complaint; it makes sense to give it the same legal status." *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006).

Having examined Supreme Court amount in controversy cases where there is an *ad damnum* clause in the complaint and Judge Easterbrook's opinion in *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005), I recognize that my statement in *Sayre v. Potts* that "the amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal" is off the mark. 32 F. Supp. 2d 881, 886 (S.D. W. Va. 1999). The amount in controversy is not what the plaintiff, his lawyer, or some judge thinks a jury would award the plaintiff assuming he prevails on the merits. It is what the plaintiff claims to be entitled to or demands. On this point, the *Brill* opinion is informative:

> The district judge thought that a removing litigant must produce evidence that a favorable judgment will award Plaintiff more than the jurisdictional minimum. . . . Yet suits are removed on the pleadings, long before "evidence" or "proof" have

---

[9] In contrast, "In a suit for injunctive relief, 'the amount in controversy is measured by the value of the object of the litigation.'" *Macken v. Jensen*, 333 F.3d 797, 799 (7th Cir. 2003) (citing *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333 (1977)).

11

>been adduced. The question is not what damages the plaintiff will recover, but what amount is "in controversy" between the parties. That the plaintiff may fail in its proof, and the judgment be less than the threshold (indeed, a good chance that the plaintiff will fail and the judgment will be zero) does not prevent removal. Once the proponent of jurisdiction has set out the amount in controversy, only a "legal certainty" that the judgment will be less forecloses federal jurisdiction. This standard applies to removed cases no less than to those filed initially in federal court.

427 F.3d at 448 (internal quotations and punctuation omitted).

When there is no *ad damnum* clause or settlement demand, the court has no information about what the plaintiff *claims* to be entitled to. *See Brill*, 427 F.3d at 449. ("The complication is that a removing defendant can't make the plaintiff's claim for him."). Lacking an expressed statement of the amount claimed, a court looks to the totality of the circumstances, including the complaint, the type and extent of the plaintiff's injuries, the amounts awarded in similar cases, and losses incurred to date of removal. Properly analyzed, a court is not to use this information to estimate the amount a jury would award the plaintiff assuming he prevails, but rather to estimate what a reasonable plaintiff would demand or claim. If the court thinks that a reasonable plaintiff would claim more than $75,000, then the defendant has met its burden of proof.[10] *See Rehkemper & Son, Inc. v. Indiana Lumbermens Mutual Ins. Co.*, No. 09-858, 2010 WL 547167, at *2 (S.D. Ill. Feb. 10, 2010) ("[T]he burden is to show 'what the plaintiff hopes to get out of the litigation; if this exceeds the jurisdictional amount, then the case proceeds in federal court

---

[10] The following quote from the U.S. Supreme Court decision in *Smithers v. Smith* further calls into question our current judicial valuation approach:
>We know of no case that holds that in [a situation where it is legally possible for the plaintiff to recover the full amount of the damages claimed, which are over the jurisdictional amount] the judge of the circuit court is authorized to interpose and try a sufficient part of the controversy between the parties to satisfy himself that the plaintiff ought to recover less than the jurisdictional amount, and to conclude, therefore, that the real controversy between the parties is concerning a subject of less than the jurisdictional value, and we think that, by sound principle, he is forbidden to do so.

204 U.S. 632, 644 (1907).

12

unless a rule of law will keep the award under the threshold.'") (citing *Rising-Moore*, 435 F.3d at 816).

Because the amount in controversy is what the plaintiff claims or demands, rather than an estimation of the plaintiff's likely recovery if he prevails, it does not matter that the plaintiff's settlement demand may not accurately reflect the "value" of the case. Likewise, in my experience as a lawyer and a judge for more than forty years, the amount claimed in an *ad damnum* clause is rarely a product of careful calculation of the amount the plaintiff expects to recover at trial, but rather a hopeful and optimistic demand high enough to get the defendant's attention. Nevertheless, it is agreed that when the amount stated in the *ad damnum* clause is over $75,000, it generally reflects the amount in controversy. The same should be true of a settlement demand.

As a judge looking at this, I keep firmly in mind that the plaintiff is the master of his complaint and therefore the amount in controversy is the amount the plaintiff *claims* to be entitled to unless that amount is legally impossible. I am also mindful that the plaintiff is the master of any settlement demand made on the defendant. Because of this insight and the reasons below, I **HOLD** that a demand in excess of the jurisdictional minimum should be treated as the amount in controversy, unless the plaintiff shows that to a legal certainty he cannot recover over $75,000.

This approach enhances the predictability and efficiency of jurisdictional decisions. These attributes are particularly important now that fewer complaints contain an *ad damnum* clause as a result the West Virginia legislature's adoption of West Virginia Code § 55-7-25. It puts the parties on notice that a settlement demand over $75,000 will generally be dispositive of

13

the jurisdictional issue of the amount in controversy. It also relieves the court of the metaphysical task of putting a value on the case. "Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999) (reviewing a determination of fraudulent joinder). This approach, as I see it, provides a uniform, and therefore predictable, method for directing judicial traffic. In addition, judicial resources are at stake, and this approach is more efficient. "Complex jurisdictional tests complicate a case, eating up time and money as the parties litigate, not the merits of their claims, but which court is right to decide those claims." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010) (clarifying the principal place of business test). Treating a settlement demand as generally conclusive allows the court to proceed to the merits of the case more quickly.

      ii.      <u>Application</u>

In this case, Mr. Scaralto sent a settlement demand to the defendants for $150,000. The plaintiff cannot show that it is a legal certainty that he is unable to recover over $75,000. Accordingly, I **FIND** that the defendants have met their burden of proving the requisite amount in controversy and **DENY** the plaintiff's Motion to Remand [Docket 6].

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

                                      ENTER:      November 29, 2011

                                                    Joseph R. Goodwin, Chief Judge